25-1632 Eastern Missouri, John Dukeman, II v. Dylan Wyatt All right, Mr. Talby, we'll hear from you first. Thank you, Your Honor. May it please the Court. Qualified immunity exists for cases like this. It protects officers like Trooper Wyatt here. Trooper Wyatt did not seize or use any force against Mr. Dukeman. A dog handled by another law enforcement officer for another law enforcement agency did. Still, the District Court denied Trooper Wyatt qualified immunity, finding that the facts, though scant, sufficiently alleged a clearly established constitutional violation. That was error. The District Court appears to have allowed two claims to proceed against Trooper Wyatt, an excessive force claim and a failure to intervene claim. That on its own makes no sense. Well, maybe that's true, but suppose she was wrong on the first. What about the failure to intervene? The allegation and the complaint, as I understand it, is that these officers not only didn't command the dog to stop, but allegedly encouraged the dog to continue mauling the man after he was attacked without warning by the dogs. If that were true, wouldn't that be a violation of the Fourth Amendment? Not without more. It could be with respect to the individual who handled the dog, who had control over the dog, had the ability to control the dog. What's missing here is there are no factual allegations that Trooper Wyatt had the means or the opportunity to prevent the harm. You think there's no allegation that he could have issued some command to cause the dog to retreat? There are no factual allegations that any command that Trooper Wyatt would have given would have done anything to the dog. Because he, you say he was from a different agency? Trooper Wyatt is a Missouri State Highway Patrol trooper. The dog belonged to the St. Genevieve County Sheriff's Department. Was there some kind of universal command to cause a dog to disengage among law enforcement? I am not aware of that. There's no allegation of that? There's no allegation of that. And certainly in that regard, Trooper Wyatt would be in no different position than Dukeman himself would be in if there was a universal command. Well, if Dukeman wasn't a law enforcement officer, he might not know the code word. There are no factual allegations that Trooper Wyatt knew the code word either, Your Honor. Well, is there any evidence that there was a code word? There isn't. There are no allegations that Trooper Wyatt had any ability to control the dog or had any control over the dog at all. And so, to the extent that, and so I guess kind of stepping back because- I mean, there is an allegation that the defendants failed to promptly command the canine to stop attacking, biting, and or to release Dukeman. Do you think that's enough to imply on a motion to dismiss that each of the defendants had the ability to make such a command? I don't believe so. When generally speaking, this court and the courts don't allow these generalized vague allegations about defendants as opposed to Sergeant Oaks said this, Trooper Wyatt said this, to state a constitutional violation anyway. But just those allegations doesn't get you to whether the Trooper Wyatt used commands to get the dog to stop or told the dog to stop. He has to have the ability to prevent the harm. There's also an allegation that the defendants, plural, encouraged and commanded the dog to continue to maul and attack Dukeman. What about that? It's sort of the same bag. I mean, there's certainly not something that we would condone, but it also doesn't get beyond a conceivable violation to a plausible violation of the Constitution because there are no allegations that would support that the dog is going to listen to what Trooper Wyatt says at all. And what we do know is that this is a trained police dog, according to the district court, in the bite and hold method. Is there a separate claim proceeding against Oaks? Sergeant Oaks is a part of this proceeding. The district court also denied... No appeal from him. He didn't appeal. There's also another deputy that is... So there's Sergeant Oaks, there's another St. Genevieve County deputy who was also present, and Trooper Wyatt, all searching for Mr. Dukeman in this heavily wooded area. This is at the motion to dismiss stage. And the allegation basically... There's a lot of allegations that say the defendants did this, the defendants did that. And, of course, no record's been developed, right? So at this point, you don't have actual evidence, right? And so we're having this theoretical conversation about what happens when. And all of that would have been developed had there been even a single deposition taken of somebody who trains dogs. We would know the answer to, is there a universal command? We would know the answer is, will the dog respond to somebody else who calls the dog off? Or is the dog trained to listen only to its handler? And, you know, while I have some suspicions of what the answers are to all those questions, because I've sat as a trial judge for a long time, you know, on this record, you just say, if you take this as a proven fact that they failed to warn, that Officer Oaks turned the dog loose, that Deputy Wyatt did not warn. Deputy Wyatt made no attempt to intervene. Deputy Wyatt then encouraged the dog to sick him, as he says, sicking the dog on, and continuing to direct the dog to attack while he was in a prone position trying to surrender. Except all those facts is true at this point, right? You accept that the factual allegations are true. I think there's maybe more there than what are the factual allegations. Well, I'm not sure that's true. I was just reading the complaint, and I think that pretty much everything I said is in that petition. What do you think I misstated? I'm not sure that it is that Trooper Wyatt specifically said anything. There are no specific – Well, there are. No, it says the defendants did this, right?  So why – Are you saying the group pleading like that is insufficient? Yeah, and that's generally what this court has held. The group pleading with just vaguely stating defendants isn't adequate. And part of why it isn't adequate, because Trooper Wyatt is not in the same position as Sergeant Oaks, who is the dog's handler. And so I think that there does need to be more facts about what Trooper Wyatt did. And specifically, I think where it may be most evident is with this failure to warn, because what this court – and that is really, I think, what forms the basis of the district court allowing the excessive force claim against Trooper Wyatt to go forward was that he didn't provide a warning. And the district court relied on Adams Beach City of Cedar Rapids. And notably in that, and I think what she relied on, I guess, is that the court's language that said that there is a warning requirement which would provide underlying – that would provide an individual peaceful opportunities to surrender. But what this court has never held is that there is some stand-alone warning requirement divorced from the Fourth Amendment. Here, there's no factual allegations that Trooper Wyatt seized Mr. Dukeman. And absent a seizure, there is not a duty to warn. This court has never held that an officer has a duty to provide a warning of another officer's potential use of force. And so whether Sergeant Oaks – and really what Adams said was that Sergeant Oaks had to provide a warning. And in fact, what Adams said was Sergeant Oaks couldn't have relied on Trooper Wyatt providing a warning or Deputy Green. Because Adams said that there is a subjective requirement of an officer to provide a warning. And the officer in that case couldn't rely on the other officers who had also deployed to Oaks. But also, I guess two things about the allegations. They don't necessarily get beyond the conceivable to the plausible violation for Trooper Wyatt because to have a failure to intervene, he has to have the means and the opportunity to prevent the harm. And absent some factual allegations that Trooper Wyatt's actions could have prevented the harm, it just hasn't satisfied the federal pleading standards. So once there's no allegation that the dog would have listened to a command by a different officer, then Officer Wyatt – Trooper Wyatt is essentially a bystander to this whole incident. I think that's correct. Absent some other allegations that he could have intervened in some other way and some case law that would require it. And you said that there hasn't been any discovery. But I do want to note that Mr. Dukeman had a full trial on the resisting arrest and on the stealing of the school bus. So Mr. Dukeman has developed a factual record about what occurred, who was there, and in those proceedings. The point, I think, was you didn't put in an affidavit, for example, that says Wyatt had no ability to control the dog. I did not. I did not want to convert this to summary judgment because the pleadings are inadequate. Well, that's the question we have to decide. That is correct. If we think this is sufficient, then you're going to have to put in your affidavit. That's right. We'll have to go through another round. Yeah, because ultimately the court is supposed to decide qualified immunity issues at the earliest opportunity. But you're not required to file a motion prematurely if you don't think you have a good enough record. No, you're right. I did not have to file a motion if I thought that these pleadings were adequate. I simply did not. And part of that is, and I think going beyond that, it's not just whether it's a constitutional violation. It's whether it was clearly established that in these circumstances, the particular circumstances that Trooper Wyatt faced, that the law was clearly established that he had a duty to act or he would be violating the Constitution under this failure to intervene theory. And I would note that plaintiff cites to no cases, certainly no binding authority on this court that would support that. And equally, the district court really didn't either. The cases that this court has held about dog bites, the bite and hold method, Kula, Jabra, and the Adams case aren't failure to intervene cases. And they wouldn't have put Trooper Wyatt on notice in this case that he had some duty to take some further action. And Mr. Dukeman doesn't cite to those cases in any event. And he relies on three Ninth Circuit cases to argue that the law is clearly established under the failure to intervene. But those aren't failure to intervene cases either. And in fact, two of those Ninth Circuit cases said there wasn't even a constitutional violation. The third one has been criticized by a district court judge in this circuit, citing to the Sixth Circuit, saying that that case committed the error of citing the law at too high a level of generality to. Which case? You say this case and that case. It's a little hard to follow. Sorry. There are three Ninth Circuit cases. If you don't have them in mind, that's OK. I don't know which. I don't have the name in mind of which one. That would be more helpful. I will be happy to give it to you in rebuttal. What? I'll be happy to give you the case name on rebuttal. Well, if you think it's important. And so because Trooper Wyatt didn't violate a clearly established constitutional right, I'd ask the court to reverse. And I would like to reserve the remainder of my time for rebuttal. You may. Thank you for your argument. Mr. Luby, we'll hear from you. Thank you, Your Honor. May it please the court. Thank you for allowing me to appear today. A couple of things right off the bat. Could you adjust the microphone? A couple of things right off the bat, Judge, Your Honor. Referring to the pleading, Trooper Wyatt has mentioned throughout the pleading, specifically multiple times. I referenced that in my brief. But you just have these general allegations about the defendants doing it. I do have some of that. But I also reference Wyatt specifically multiple times on pages 11, pages 12, pages 13. I know his name is in there. But the question is, what is he alleged to have done? You say he failed to intervene. But you don't say he was able to intervene. You say that he could have given a command to cause the dog to release, or he had some ability to make the dog continue to attack. We do. What about that? On line 52, we say, Oaks, Trooper Wyatt offered no resistance to the canine from arrest and provided no resistance to the canine to attack and maul. But here's a critical point. Did you ever make an allegation that Wyatt had any control over the dog? I mean, what you've got is a dog that's trained to another agency, assigned to an officer who's been a long-time handler of that dog. The dog is let loose, and there's not even an allegation that anybody else has any ability to control that dog at all. Well, he could have. The allegation on page 55, line 55, they permitted. He could have stopped the dog. He could have intervened. He could have grabbed the dog. He could have touched the dog. He failed to intervene. There was ongoing scratching, gnawing, even after he was in a prone position. So what's your best case for that? He could have touched him. He could have grabbed him. He could have pulled him. Is there a case? What's your best case? Rosenbaum. Your best case that under these or similar circumstances that there's a constitutional duty of an officer to intervene by grabbing the dog and preventing it from attacking or by intervening some other way. Do you have a case? I would refer to the Rosenbaum v. City of San Jose, and there's a line of cases from the Ninth Circuit that I believe address this case factually. Do those cases involve a dog? They do. Yes, Rosenbaum specifically involves a dog. Is it a failure to grab the dog or physically intervene? Rosenbaum more specifically says that if you allow the dog to continue to maul or continue to attack an individual for more than 20 seconds or more than a sufficient period of time, that that in and of itself is a sufficient constitutional violation. Was that a claim against the handler of the dog? Well, the handler, there is no specific handler because the dog was not on a leash, and that's a main part of the allegations. He's trying to conflate everything to one officer and ignoring the obligations of the other, Your Honor. The central allegation to this, to the misuse of the bite and hold technique, is that the dog was not controlled at all, and there's a numerous apprehension guidelines. That doesn't mean the dog didn't have a handler. Didn't some officer bring the dog to the scene? Well, the dog was not initially. That's correct. In a vehicle? Initially. That's correct. And that was Oaks. And was Oaks in a different agency, different officer?  So do you have a case that says that an officer employed by a separate agency who happens to be on the mirror scene of a dog bite incident somehow has a constitutionally imposed duty to physically attempt to remove a biting dog? I mean, that strikes me as... By hand? By hand. I mean, go up and grab the dog? I mean, from everything I've heard about these dogs is that they listen to one handler, one handler only, and that's not in the record here, but I'm sitting there going, I mean, I'd like to see the case where some third-party officer walks up to somebody else's dog and grabs it, and that's a constitutionally imposed duty. I'll quote from Rosenbaum, which is a Ninth Circuit case. It's not that. I don't have anything that specific. Well, do you have anything that says that... I mean, listen, the way that force is, like if Officer Oaks had shot a gun, that doesn't come to bear on Trooper Wyatt for failing to intervene, right? And the dog is in many ways no different than a gun. It's a remote piece of force that's released by someone who's got control over it. And I think that in order to say that there's a duty, you have to establish that there's some way that Trooper Wyatt, or at least allege that there's some way that Trooper Wyatt could have had control of that dog. And it's not ever alleged. Well, Your Honor, I mean, respectfully, I don't think any officer gets to sit there and let the dog maul the plane. They could have all tried to command him. I don't think they get to sit there and just let him maul the individual under arrest, especially after he's under arrest. Okay, and I respectfully... I get that, but then the question is there's a causation problem for the injury, right? Like is there any evidence that he could have done... Is there any claim that he could have controlled that dog? They could have put a leash on it. He could have said to Officer Oaks, why isn't the dog leashed? So you're saying he could have influenced Oaks? He could have said, they could have said, Officer Oaks, why don't you put this dog on a leash? Why isn't this dog controlled? He could have told him to stop. He could have intervened. He could have said, stop attacking the... He could have told Oaks to command him. He could have tried to command the dog himself. And the allegations, as I've stated, Judge, is that they're allowing him to continue to attack him even after he surrendered. And the Rosenbaum case... Rosenbaum, I don't think, is cited in the brief. Oh, it's cited in the brief. It's cited in the brief. Yes. All right, let me look again. Is that the first name of the case or the second? It's Rosenbaum v. City of San Jose, 107, 4th, 1919. 107F, 4th, 1919? That's correct. You think it's in your brief? Oh, yeah. All right, we'll look it up. I can show you on page... Oh, yeah, I see it here. It's cited once on page 13. And then there's a line of cases, namely the Watson case. Rosenbaum is adequately educated, clearly established at the time, alleges that defendants allowed the police dog to continue biting him for more than 20 seconds after he had fully surrendered and after under officer control. And our petition alleges that after, even after, Dukeman was under control, that they continued to allege that he was biting the defendant. He absolutely had a duty at that point in time, after he was surrendered, to act, Your Honor. He can't just sit there and let them just attack the person while they're down on the ground. You can't just beat a man while he's down. And these injuries are severe. They're not, you know... So, Your Honor, I mean, and respectfully on the bullet, I'm not so sure I'm going to... I'm going to respectfully, Your Honor, a bullet versus a dog. A bullet moves at a much more fast projectile than an actual canine. Your Honor, I don't know that they had to actually... They certainly had to try. I mean, and if they're going to use these dogs, the guidelines require them to control them. They can't just say, oh, we're going to use it, but now we can't control it. So he has to do something. He can try to... You know what they could do, Your Honor? What Wyatt could do is insist that... They can insist that if he put on a leash... And that's what the guidelines require them to do. They require it to control it. They're supposed to out the dog, and he didn't out the dog. They're supposed to out the dog. What do you mean, out? Meaning remove it from... They're supposed to be able to have control of the dog to control it, to stop it. What do you mean by out the dog? Remove it, command it to withdraw. And I don't have a case, Your Honor, where they had to physically touch it. But they're supposed to be able to out it. And then if they can't out it, then that raises a separate problem, because they're supposed to be able to out it. Then it's a misuse of the canine itself, which is, well, that's more of an issue that would have to be developed on expert testimony at the lower level of the court, Judge. But they can't just sit there and command him to maul the individual after he's surrendered. And, I mean, this Rosemont case touches upon that. Does it... Well, you've got a separate claim against Oakes, right? We do. But at the same point in time, they were working in concert together. And I don't think that... They were sitting, standing right there together. So I don't think you can just say, oh, he gets to sit there and watch him do it, or without doing something, he's still... I don't think you just get to pass it on to the handler. If that were the case, then that's just like saying you can shoot somebody and just let him keep shooting him. Now, I don't know that the dog versus the gun is the... I get it. That's where I'm going with that, Judge. Maybe an unfair analogy. Right, right. I get that. But, I mean, at the same point in time, I do think he could have touched it, he could have grabbed it, he could have commanded it. He certainly can't just sit there and encourage it. And that is specifically alleged. Where is it specifically? It says... What paragraph? Because I thought that only said the defendants. It says... Well, there's 52. It says defendants, and it says, Oakes failed to intervene and out the canine. What paragraph? Okay, page 59. Oakes, Green, and Wyatt failed to intervene and or out canine. It says... Okay, there's another thing. Defendants, page 55, line 55. Green, Wyatt failed to intervene, prevent the officers from using excessive force, permitting the plaintiff to bite and maul the plaintiff. Defendant used force and canine before, surrendered and did not out the dog and or intervene when the biting was ongoing, scratching, mauling, or continued even when plaintiff Dugan was in a prone position, compliant, and surrendering. And Wyatt's specific... That's an allegation against, quote, defendant. Page line 55 of the petition specifically refers to Trooper Wyatt. It refers to the other defendants, but it doesn't say defendants. It says defendants, Deputy Green and Trooper Dylan Wyatt. That's 55. But then the next sentence that you were just reading refers to something done by defendant. Well, it does say that, but, I mean, I need to name the actual person in every single line. Well, which defendant were you referring to in that second sentence? In that line, it does say defendant. But it does, in other lines, it clearly refers to... We do refer to... I referenced this in the brief. I referenced that Trooper Wyatt... Here, line 69. Moreover, the injury to Dukeman was distinct, identifiable, foreseeable to defendants Oaks, Green, and Wyatt, in that given his... In surrendering, the Canaan orders were unnecessary because he had surrendered. Okay? He had surrendered. So it's not necessary to use the dog after he surrendered, and that's another part of our complaint, that he's... They're not supposed... They really shouldn't be using the dog at all when the person's surrendering. The dog is used to track. There's a variety of reasons to use the dog. The dog is not... The purpose of the dog is not to effectuate the arrest itself. And I'm seeing that in a lot of these canine cases. So I think he's... And I referenced that in my brief, where Trooper Wyatt is specifically referenced numerous times. And I think the road... He can't... So respectfully to your question, Judge, I don't think... What specifically did Wyatt do, among other things? He can't... I think the law is dead on point that he can't sit there and just let the dog maul him after he surrendered, and that's alleged. And the Ninth Circuit cases do provide more specific guidance on this subject matter. This is a Watkin case. Then I think our cases... As well. And the district court found that the allegations were sufficient. And let me just further emphasize, Judge, that they're in the woods. They're all there together at that point in time. So I don't think that Mr. Trooper Wyatt just gets to blame everything on the quote-unquote handler. And you're right. He was a handler at the initial point in time, but part of the main thrust of the case is that the dog was totally uncontrolled and that they failed to control it. And not only did they fail to control it, they alleged and continued... What's your best case on failure to intervene? There are cases... May I answer? Hold on a second. Okay. I want to hear your case, but I'm thinking... I think we have cases where, for example, one officer is beating a suspect. There may be a duty of the other officer at some point to intervene physically. Do we have cases that say that? We do cite several cases in the brief. Floyd v. City of Detroit. Are those analogous enough here to where, I mean... Nance v. Sammies is a case we cite. What are the facts of that? What was the situation there? I mean, they're not... Specifically on canines. No, no. Well, they wouldn't be dog cases, I assume. Is that what you're saying? Yeah. The Floyd v. City of Detroit, obviously that's the one where he's sitting there, the famous George Floyd case where he's saying, I can't breathe. I would actually argue that this is similar to that case in some respect because he's being mauled by a dog. You mean, in that case, was it held that the officers had an obligation to... Intervene. ...to remove Chauvin from the... Correct. Correct. Yes, that case was settled, my understanding. But, I mean... That was the pleading. Right, right. But, I mean, I would argue that this case is somewhat analogous. That's not the George Floyd case because that case happened in Minneapolis. Floyd v. City of Detroit is some other case that involved excessive force... Either you have the city wrong or the plaintiff wrong. Yeah. Well, in any case... The case is a real case. Floyd v. Detroit. Okay. The case laws, Nance, the case laws clearly establishes it's a duty to intervene. I don't... I mean, do I have something specific? I mean, the Rosenbaum and the line of cases from the Ninth Circuit...  ...I think are very instructive on the issue of the use of the canine. Very well. Thank you for your argument. Mr. Talby, would you care to make a brief rebuttal? You may. This Court has held, and the Supreme Court has held, that in the Fourth Amendment context, the law establishing the clearly established constitutional violation has to be fairly specific because Fourth Amendment claims are so fact-specific. And as plaintiff acknowledged, there is not a case that would put Trooper Wyatt on notice without relying on these generalized assertions that officers have a failure to intervene. And what he went to was that he had to touch the dog. But there, similarly, are not allegations that Trooper Wyatt had the opportunity to grab the dog, that he was near enough to grab the dog, that... And there are certainly not cases that would tell him that he is required to do so. What we heard was that he was, quote-unquote, working in concert with these other officers, that if they are going to use dogs. But what this Court and the Supreme Court has held, that the qualified immunity analysis, the analysis under Section 1983, is an individualized analysis because officers aren't responsible for the constitutional violations of other officers. They're responsible for their own conduct. And so what Trooper Wyatt is responsible for is his own conduct. And frankly, letting the dog go in the woods, whether that's a violation of policy or not, Mr. Dukeman's own cases suggest they could do that. One of the cases from the Ninth Circuit he relies on was Miller. And in there, the Ninth Circuit said that if the deputy had wandered blindly into the woods with the dog on the leash, as the plaintiff proposes, the deputy might have walked into an ambush or been pulled into a violent situation. So the cases he cites wouldn't even require the dog to be on a leash. And the case that the Sixth Circuit and a district court in this circuit claimed highly... Analyzed law at too high a level of generality was the Watkins v. City of Oakland case. There is no case that would put Trooper Wyatt on notice that he would violate Mr. Dukeman's clearly established constitutional rights. And I ask the court to reverse the district court. Thank you. All right. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course. Thank you.